Louis A. Linder *vs.* Fidelity & Casualty Co. of New York *et al.*

Argued Jan. 9, 1893. Decided Jan. 13, 1893.

**Findings.**

Findings of fact *held* supported by the evidence.

Appeal by plaintiff, Louis A. Linder, as administrator of the estate of Robert L. Lind, deceased, from that part of a judgment of the District Court of Blue Earth County, *Severance*, J., entered September 15, 1892, adjudging that the action be dismissed on the merits as to the defendants the Fidelity & Casualty Company and W. L. Comstock, its local soliciting agent.

On April 25, 1890, Robert L. Lind obtained from the Fidelity & Casualty Company of New York a policy insuring him for three months next thereafter, in the sum of $2,000, against death resulting from bodily injuries, through external, violent and accidental means, payable to Richard Caton, his clerk, who it was understood, should act as a trustee for Lind's creditors in case of his death. . Lind was a merchant, and was owing debts. Thereafter, on June 29, 1890, Lind was accidentally drowned, and the insurance money became payable. The plaintiff was duly appointed administrator of Lind's estate. He and Caton both claimed the insurance money. On July 26, 1890, they made a written agreement in settlement of the dispute, whereby Caton was to have $500 of the money and the plaintiff $1,500. Caton agreed to indorse the draft that should come to him for the money, and sign all necessary vouchers to the company.

The agent, Comstock, signed this agreement as a witness, and was fully informed of its contents. Thereafter, on August 26, 1890, the company paid to Caton the $2,000 by a draft to his order which it sent to Comstock and which he delivered to Caton. The Insurance Company had no notice of the agreement between Caton and the plaintiff. The only authority that Comstock had from it was to solicit insurance, countersign and deliver policies and collect premiums. He had no authority from the company to make contracts for it or alter or waive the terms of the policy, or accept or waive notice for the company, and he so stated to the parties when he witnessed their agreement. Caton negotiated the draft and received the $2,000, and refused to deliver to plaintiff any part of the money. Plaintiff, as administrator, demanded $1,500 of the money, and brought this action against Caton and Comstock and the Insurance Company to recover it. The issues were tried July 22, 1891, before the court without a jury. Findings were made and judgment entered dismissing the action on the merits as to the Insurance Company and Comstock, but adjudging that plaintiff recover of Caton $1,500 and interest and costs. Plaintiff appeals.

*Lorin Cray* and *Thomas Hughes*, for appellant.

Although the defendant Comstock could not and did not bind his principal by the agreement of July 26, 1890, yet by it Caton made an equitable assignment to plaintiff of $1,500 of the insurance money, and Comstock, after having both agreed to become the trustee of the parties, and to receive this money and to disburse it according to the agreement, deliberately violated his trust, and rendered himself liable to a personal judgment for the amount lost to plaintiff. The defendant Fidelity & Casualty Company having made defendant Comstock its agent to receive, deliver and pay out to Caton the money in question, had notice of this contract, which worked an equitable assignment of that portion of the money. Notice to him as such agent was notice to his principal, and an action in equity will lie against all the defendants to enforce this equitable assignment, and the payment of the money due thereunder.

Notice to, or knowledge of an agent, be he a general or a special,

respecting a matter affecting the very thing he is then actively engaged about as agent, is notice to and knowledge of his principal.    *Conley* v. *Chilcote*, 25 Ohio, 320; *Sooy* v. *State*, 41 N. J. Law, 394; Wharton, Agency, § 177; Wade, Notice, § 432.

*W. L. Comstock* and *Davis, Kellogg & Severance*, for respondents.

One cannot make an assignment of a part of a cause of action, so as to prevent the debtor from paying the debt to the original payee and being released; even though he have notice of it.    But notice to Comstock in this case of the existence of this contract between Caton and plaintiff would not be notice to the company.    The draft was made payable to Richard Caton and was sent to Comstock for the mere purpose of having him hand it over to Caton.    Comstock had no authority to deliver it to any one else.    He could not collect the draft, and could not change the terms of the policy, which provided that it should be payable to Caton.

GILFILLAN, C. J.    The facts in the case do not admit of the questions of law raised by the briefs.    Treating the contract between Caton and plaintiff as, between them, an equitable assignment of a part of the claim, still, as found by the court below, the company paid the claim to its creditor, the person to whom it had contracted to pay, without having assented to, or having any notice or knowledge of, such assignment; and that excludes any claim by plaintiff against it.    The court was not only justified in so finding the facts, but, on the evidence, it could not have found to the contrary.    When the contract was made, Comstock, the company's local soliciting agent, not only refused to assume to bind the company, but declared that he had no authority to do so.    The evidence was uncontroverted that in fact he had no authority in the matter of adjusting, settling, or paying losses, or any authority but to solicit insurance, countersign and deliver policies, and collect premiums, and, when the draft payable to Caton, the beneficiary in the policy, was sent to him, to deliver it to Caton, and take his receipt.    Such an arrangement as this contract contemplated was a matter beyond the scope of his authority, and notice of it to him was not notice to the company.

As to Comstock, if he agreed to see the contract between Caton and plaintiff carried out, it was by parol, and, as it was, in effect, to answer for the default of the former, it was within the statute of frauds.

Judgment affirmed.

(Opinion published 54 N. W. Rep. 95.)